**FILED**

**JAN 2 2 2013**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

George S. Boley )
54 Bruen Ave, Unit 4 )
Irvington, NJ 07111 )
PLAINTIFF, )
)
) Case: 1:13-cv-00089
v. ) Assigned To : Walton, Reggie B.
) Assign. Date : 1/22/2013
) Description: Pro Se General Civil
Atlantic Monthly Group, & )
Jeffrey Goldberg )
600 New Hampshire Ave NW )
Washington, DC 20037 )
DEFENDANTS. )
)

## COMPLAINT

Plaintiff George S. Boley ("Plaintiff") brings this Complaint for defamation against the Atlantic Monthly

Group and Jeffrey Goldberg ("Defendants") and states the following:

### JURISDICTION AND VENUE

1.      This Court enjoys subject matter jurisdiction over this action under 28 U.S.C. §

1332(a)(1) because the Defendants are citizens of the District of Columbia and the Plaintiff is a

citizen of a foreign state: to wit the Republic of Liberia , West Africa, and the amount in controversy

exceeds $75,000.

2.      This Court enjoys personal jurisdiction over the Defendants because the false and

defamatory statements made by the Defendants were published in the District of Columbia and the

Defendants are residents of District of Columbia.

3.      This Court enjoys venue under 28 U.S.C. § 1391(a)(2) because all or a substantial portion

of the events that gave rise to the Plaintiff's claims transpired in the District of Columbia, including

the publication or republication of the defamatory falsehoods and the damage to the Plaintiff's reputation.

## PARTIES

4.      The Plaintiff, George S. Boley, is an educator and farmer and formerly a distinguished public servant of the Republic of Liberia having served in various capacities in the Liberian Government including, Minister of State, Minister of Education and Minister of Post and Telecommunications among others.

5.      The Defendant, Atlantic Monthly Group, is a corporation and publisher of a monthly magazine named and styled "The Atlantic" which covers news and analysis on politics, business, culture, technology, national, international and life, with headquarters at The Watergate, 600 New Hampshire Ave, N.W. Washington, D.C. 20037. The Atlantic is widely distributed in print and on the internet with web address www.theatlantic.com.

6.      The Plaintiff is informed and believes and therefore alleges that the Defendant Jeffrey Goldberg is a citizen of United States and resident of the District of Columbia and an employee and/or agent of the Defendant Atlantic Monthly Group, described and promoted on its website as "a national correspondent for *The Atlantic* and a recipient of the National Magazine Award for Reporting."

## STATEMENT OF FACTS

7.      The Plaintiff George S. Boley was born in Liberia, West Africa on December 7, 1949 and is and continual to hold said citizenship.

8.      After completing high school studies in Liberia he matriculated to the State University of New York at Brockport where he earned his undergraduate degree.

9.     The Plaintiff graduated from the University of Akron in Ohio, having obtained a
Doctorate in Education and so awarded in June 1977.

10.     In 1978 the Plaintiff returned to Liberia, West Africa, where he was first appointed
Assistant Minister and then Deputy Minister at the Ministry of Education. Throughout his time in that
sector of public service he advocated and was known for principles against inequality in the
educational system and the social fabric of Liberia.

11.     On April 12, 1980, a revolution led by enlisted men of the Armed Forces of Liberia
overthrew the existing Liberian government of President William R. Tolbert, Jr. to cure the social and
political inequities in Liberia. The revolution was widely welcomed by the Liberian people and
recognized by the international community.

12.     The Plaintiff was then appointed to serve, accepted and did serve in various capacities,
serving the Liberian people honorably and distinctly as Minister of State, Minister of Education and
Minister of Post and Telecommunications from 1980 to 1986.

13.     On December 24, 1989, warlord and now adjudged war criminal Charles Taylor led a
rebellion from Cote   d'Ivoire, a country neighboring Liberia on its eastern border. The ostensible
purpose of the so-called rebellion was to end rampart corruption in Liberia.

14.     It soon became clear that Mr. Taylor intended to and did unleash ethnic cleansing and
genocide against the Krahn and Mandingo ethnic groups, predominantly known as supporters of the
existing duly elected government of Samuel Doe.

15.     As the Liberian civil war raged, various groups and prominent individuals began to look
for peaceful solutions to end the Liberia conflict. As a prominent Liberian, the Plaintiff could simply
not sit on the sidelines and allow the carnage to continue.

16.     In 1990, the Plaintiff and other prominent Liberian citizens organized a group named and styled the "Liberia Peace Council or LPC." The aims and objectives were  to foster dialogue among Liberians and international partners to find an amicable end to the civil war and operated as a political instrument to advocate for a peaceful resolution to the Liberian Conflict.

17.     Shortly after the formation and operation of the LPC, splinter rebel groups from various warring factions began to operate in Liberia known as the LPC or "LPC Collation". These new groups where neither under the command nor control of the Plaintiff's LPC political instrument group.

18.     The Plaintiff was elected Chairman of the LPC political wing and operated from Monrovia, the capital of Liberia, where international peacekeeping troops were based and various nations in the international community, including the United States, which  he visited to negotiate peace, maintained diplomatic missions.

19.     After successful peace negotiations in Accra in 1996, the Liberian civil war finally came to an end and general elections were held in which the Plaintiff stood as a Presidential candidate, although unsuccessful.

20.     On January 27, 2010, the Defendant  Goldberg wrote an article published on the Atlantic website that stated the following about the Plaintiff:

a.     "Some news out of New York. George Boley, a warlord I first met when covering the Liberian civil war in the mid-90s, and who later moved to New York, was arrested January 15th by U.S. Immigration and Customs and is now sitting in a jail cell in upstate Batavia. So far, he's being charged administratively, with lying in order to gain entry into the U.S., and with committing extrajudicial killings while in another country. Other branches of Homeland Security, I've been told, are looking at charging him with actual

war crimes, which is a good thing, because he belongs in the Hague with his fellow

warlord, Charles Taylor."

    b.  "......I knew, from firsthand observation, that his organization, the grossly-misnamed

Liberian Peace Council, recruited and armed child soldiers; fed them drugs; and ordered

them to rape and kill."

(http://www.theatlantic.com/international/archive/2010/01/george-boley-liberian-

warlord-is-finally-under-arrest/34330/)

21. Again on February 11, 2010, the Defendant Goldberg in a post on the Defendant Atlantic

Monthly Group, on a story about the relationship between  Charles Taylor and Rev. Pat

Robertson, wrote:

    a.  "You should pardon the expression, but, Christ. Charles Taylor is an evil man, more evil

than my own personal Liberian warlord, George Boley. I suppose I shouldn't be surprised

by Pat Robertson, but this is fairly unbelievable."

(http://www.theatlantic.com/international/archive/2010/02/pat-robertson-friend-of-

warlords/35750/)

COUNT I- DEFAMATION PER SE

22.    The Plaintiff incorporates by reference into this Count all of the allegations appearing in

paragraphs 1-18 of  this Complaint.

23.    The Statements falsely alleges that the Plaintiff committed acts which would constitute

war crimes in violation of statutes and conventions governing war crimes as recognized in the United

States and Liberia  which, if true, he may be punished by life imprisonment in the United States,

Liberia or The Hague.

24.     The publication and re-publication of the Statements proximately caused general and special damages to the Plaintiff. The Defendants knew, anticipated, foresaw, and intended that the Statements would be read by persons throughout the United States and the world and would damage the reputation of the Plaintiff.

25.     The Statements have adversely affected the Plaintiff's scholarly credibility, general reputation in the international community and subjected him to unspeakable humiliation and accusations in the United States and in Liberia.

26.     The Statements have adversely affected the Plaintiff's ability to make a living and enjoy a peaceable life in the country of his choice, causing his unceremonious and unlawful deportation from the United States.

27.     The Defendants published the statements knowing them to be false with reckless disregard to the truth.

## COUNT II-DEFAMATION PER QUOD

28.     The Plaintiff incorporates by reference into this Count all of the allegations appearing in paragraphs 1-24 of this Complaint.

29.     The Statements, individually and collectively, referred to herein have caused, are causing, and will cause the Plaintiff to suffer injury to his professional standing, to his reputation and good name; and, they have held and will continue to hold the Plaintiff up to public scandal and ridicule.

30.     The Statements were calculated to, and do, expose the Plaintiff to public scorn, hatred, and ridicule. By such published Statements, the Defendants did injure the the Plaintiff's reputation within his professional circles and in the community at large.

31.    The publication of the Statements proximately caused general and special damages to the the Plaintiff. The Statements have adversely impacted the Plaintiff's scholarly and professional credibility, and opportunities for employment.

32.    The Statements have damaged the Plaintiff's professional standing in the academic and professional community. The Statements have proximately caused the Plaintiff emotional and psychological trauma and suffering which is continuing.

## PRAYER FOR RELIEF

The Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

1)   for compensatory damages in the amount of $2 million ($2,000,000) on Count I and $2 million ($2,000,000) on Count II;

2)   punitive damages in the amount of $2 million ($2,000,000) on Count I and $2 million ($2,000,000) on Count II;

3)   both pre-judgment and post-judgment interest on both Counts; and,

4)   such other and further relief as this Court finds just and proper.

JURY TRIAL - The Plaintiff demands a jury trial.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 14, 2013.

Respectfully submitted,

George S. Boley – Pro se

c/o George S. Boley Jr.
54 Bruen Ave, Unit 4
Irvington, NJ 07111
973-741-9029 tel